## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| CASSANDRA ORTEGA, Individually and as the parent, Guardian, and next friend of ANTIONE ORTEGA, deceased, :<br><br>Plaintiff,<br><br>v.<br><br>BIBB COUNTY SCHOOL DISTRICT,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:  Civil Action No. 5:00-cv-366-2(HL)<br>:<br>:<br>:<br>: |

### ORDER

This matter came before the Court for a pretrial conference on May 2, 2006. At the conference, the parties raised with the Court the question of what showing Plaintiff must make in order to establish liability against Defendant and, in the event liability is established, what damages Plaintiff may seek. After hearing from the parties at the conference, the Court directs as follows.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

The essential facts of this case are tragic: Three-year-old Antione Ortega began school at the Butler Early Childhood Center (Butler Center) on August 10, 1998.[1] The Butler Center is a pre-kindergarten facility serving special needs children. Antione, who was born prematurely, suffered various physical ailments which caused him to be developmentally

---

[1] Antione would have turned four on August 14, 1998.

delayed. When he entered school on August 10, 1998, Antione had a trachea tube which allowed him to breath. On August 11, 1998 while on the playground at the Butler Center, Antione's trachea tube became dislodged. School officials were unable to reinsert the tube. Antione died of asphyxia due to the displacement of the trachea tube.

On August 9, 2000, Cassandra Ortega,[2] individually and as the parent, guardian and next friend of Antione Ortega, filed a civil action in this Court against the Bibb County School District (School District), the Bibb County Board of Education, and various school officials and Board members. The complaint was brought in six counts and alleged claims under the Rehabilitation Act, the Americans With Disabilities Act (ADA), the Individuals with Disabilities in Education Act (IDEA), and 42 U.S.C. § 1983. She also brought state law claims for negligence and misrepresentation. After some discovery was conducted, Defendants moved for summary judgment.

After the Court ruled on Defendants' motion for summary judgment, only Plaintiff's claims under the Rehabilitation Act, the ADA, and the IDEA remained and only claims against the school officials and board members in their official capacities and the School District remained.[3] The Court granted Defendants' motion for an interlocutory appeal as to the IDEA claim. The United States Court of Appeals for the Eleventh Circuit later accepted

---

[2] Since the filing of this case, Ms. Ortega has remarried. She is now Cassandra Ortega Goodson. However, the Court will continue to refer to her as Ortega.

[3] Because claims against the school officials and board members in their official capacities are claims against the School District, the Court will refer to the School District as the only Defendant. *See* Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).

the interlocutory appeal and subsequently determined that summary judgment should have been granted to Defendants as to the IDEA claim. Thus, only the Rehabilitation Act and the ADA claims remain for determination.

At the pretrial conference, Defendant argued that in order for Plaintiff to recover against it, Plaintiff would have to show intentional discrimination. Defendant further argued that intentional discrimination could only be established with evidence showing that a School District official with authority to institute corrective measures had actual notice of the discrimination and was deliberately indifferent to it. Plaintiff, on the other hand, contends that she is not required to show intentional discrimination, only a lack of accommodation. Additionally, Defendant argues that Plaintiff cannot recover damages for the wrongful death of Antione.

## II.     CONCLUSIONS OF LAW

### A.     Right to Compensatory Damages

Plaintiff's Rehabilitation Act Claim is brought pursuant to § 504 of the Act, which is codified at 29 U.S.C. § 794 and provides, in part, as follows: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C.A. § 794(a) (West Supp. 2005). Plaintiff's ADA claim is brought pursuant to § 202 of that Act, which is codified at 42 U.S.C. § 12132, and contains substantially similar language: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 29 U.S.C.A. 12132 (West 2005). Plaintiff alleges Defendant violated these provisions by, among other things, failing to provide qualified personnel, failing to evaluate Antione with the trachea tube in place before admitting him to the school, and failing to provide the medical services necessary to accommodate Antione's condition.

The ADA provides that claims brought pursuant to § 202 of the Act shall have the same remedies as claims brought pursuant to § 504 of the Rehabilitation Act: "The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 29 U.S.C.A. § 12133 (West 2005). The Rehabilitation Act, in turn, directs claimants to Title VI. Thus, Section 794a of the Act, specifies the remedies available for a violation of § 504 as follows: "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C.A. § 794a(a)(2) (West 1999). *See also* Barnes v. Gorman, 536 U.S. 181, 185, 122 S. Ct. 2097, 2100 (2002) (stating, "[R]emedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d . . . .").

Title VI prohibits discrimination on the basis of race, color or national origin in any program or activity receiving Federal financial assistance. 42 U.S.C.A. § 2000d (West 2003). However, Title VI does not mention a private right of action or otherwise define the scope of the remedy available to private individuals who have been subjected to conduct prohibited by the Act. Because Title VI does not define the rights or remedies that flow from a violation, the Courts have been called upon to fill in the gaps. A similar result has obtained with regard to Title IX, which prohibits discrimination on the basis of sex in education programs or activities receiving Federal financial assistance. 20 U.S.C.A. § 1681(a) (West 2000).

Courts construing Title VI have found an implied right of action. *See, e.g.,* Alexander v. Sandoval, 532 U.S. 275, 280, 121 S. Ct. 1511, 1516 (2001) (noting, "It is thus beyond dispute that private individuals may sue to enforce § 601 [of Title VI]."). Likewise, a private right of action exists to enforce Title IX. Cannon v. Univ. of Chicago, 441 U.S. 677, 99 S. Ct. 1946 (1979). With respect to § 202 of the ADA and § 504 of the Rehabilitation Act, the Supreme Court of the United States has held: "Both provisions are enforceable through private causes of action." Barnes v. Gorman, 536 U.S. 181, 184-85, 122 S. Ct. 2097, 2100 (2002).

With respect to the remedies available under these statutory provisions, private individuals may obtain damages for violations of Title VI. Alexander, 522 U.S. at 279-80, 121 S. Ct. at 1516 (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 99 S. Ct. 1946 (1979)). A damages remedy is also available for an action brought to enforce Title IX. Franklin v.

5

Gwinnett County Pub. Schs., 503 U.S. 60, 76, 112 S. Ct. 1028, 1038 (1992). Damages remedies are similarly available for actions brought under § 202 of the ADA and § 504 of the Rehabilitation Act. Barnes, 536 U.S. at 185, 122 S. Ct. at 2100. However, punitive damages may not be awarded in suits brought under Title VI, § 202 of the ADA, or § 504 of the Rehabilitation Act. Id. at 189, 122 S. Ct. at 2103.

In finding implied private causes of action and the right to compensatory damage awards, the Court has classified the relevant statutory provisions as Spending Clause legislation. In each instance, the Court reasoned that in exchange for federal funds it received, the recipient of the funds agreed to comply with federally imposed conditions. *See, e.g.,* Barnes, 536 U.S. at 185-87, 122 S. Ct. at 2100-01. In Barnes, the Court explained that Spending Clause legislation, such as that at issue here, is in the nature of a contract and further noted that a "funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract." Id. at 187, 122 S. Ct. at 2101. In determining the appropriateness under such Spending Clause legislation, the Court has consistently considered whether the "funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature." Id. In Barnes, using this analysis, the Court found that an award of punitive damages was inappropriate because "punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract." Id. at 187, 122 S. Ct. at 2102.

In view of the reasoning of the Supreme Court in Barnes and the cases on which it relies, the Court finds that Plaintiff is entitled to seek compensatory damages for violations of § 202 of the ADA and § 504 of the Rehabilitation Act. This is not to say that Plaintiff may pursue a wrongful death action, per se. However, in view of the unusual circumstances of this case, the method by which Plaintiff will be allowed to prove damages and the amount she may seek–the value of Antione's life–the compensatory damages which Plaintiff may seek will necessarily parallel those sought in a wrongful death action. Plaintiff may not, however, seek punitive damages.

### B.     Intentional Discrimination

While allowing for compensatory damages for discriminatory conduct in violation of the various Spending Clause enactments, the Supreme Court has also uniformly held that damages are only available under these provisions for intentional conduct. Thus, in Franklin, in a Title IX case, the Court noted that remedies are limited under Spending Clause statues when the alleged violation is unintentional because in such cases the entity receiving federal funds "lacks notice that it will be liable for a monetary award." Franklin, 503 U.S. at 74, 112 S. Ct. at 1037. The Court found that "[t]his notice problem does not arise in a case . . . in which intentional discrimination is alleged." Id. at 74-75, 112 S. Ct. at 1037. In Alexander, the Court was even more direct, stating, "[I]t is similarly beyond dispute . . . that § 601 prohibits only intentional discrimination" and later adding, "'Title VI itself directly reach[es] only instances of intentional discrimination.'" Alexander, 532 U.S. at 280, 281, 121 S. Ct. at 1516 (quoting Alexander v. Choate, 469 U.S. 287, 293, 105 S. Ct. 712 (1985)).

Most appellate courts considering claims under § 202 of the ADA or § 504 of the Rehabilitation Act have likewise concluded that a party seeking to recover damages under either provision must show intentional discrimination. *See, e.g.,* Delano-Pyle v. Victoria County, Tx., 302 F.3d 567, 574 (5th Cir. 2002) (stating, "A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination."); Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002) (holding that compensatory damages are not available under Title II of the ADA or § 504 of the Rehabilitation Act absent a showing of discriminatory intent); Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999) (stating, "[E]ntitlement to compensatory damages under section 504 of the Rehabilitation Act requires poof the defendant has intentionally discriminated against the plaintiff."). *But see* Washington v. Ind. High Sch. Athletic Ass'n., Inc., 181 F.3d 840, 847 (7th Cir. 1999) (a plaintiff making a claim under the Rehabilitation Act need not prove impermissible intent); *and* Ferguson v. City of Phoenix, 157 F.3d 668 (9th Cir. 1998) (Tashima, J., dissenting) (contending that conclusion that Title VI requires showing of intentional discrimination does not also mandate conclusion that Title II of the ADA requires showing of intentional discrimination in order to recover compensatory damages).

In this case, the basis for liability stems from the decisions that the School District employees made in determining what employees would oversee Antione's care and what level of training those employees would receive. The issue the jury must decide is whether those decisions served to deny Antione access to educational benefits and opportunities on

the basis of his disability. The Court is persuaded that Plaintiff must show that the School District employees "intentionally discriminated" against Antione, in order for her to recover compensatory damages on his behalf.

The Supreme Court concluded that a plaintiff seeking to recover compensatory damages under Title VI or Title IX must show intentional discrimination. <u>Alexander</u>, 532 U.S. at 280-81, 121 S. Ct. at 1516 (Title VI); <u>Franklin</u>, 503 U.S. at 74, 112 S. Ct. at 1037 (Title IX). Both Title VI and Title IX are Spending Clause enactments, as are § 202 of the ADA and § 504 of the Rehabilitation Act. Furthermore, each shares the same rights, remedies, and procedures. It necessarily follows, therefore, that if the Supreme Court has declared that Title IX and Title VI require a showing of intentional discrimination in order to recover compensatory damages, then § 202 of the ADA and § 504 of the Rehabilitation Act also require a showing of intentional discrimination to recover compensatory damages.

While generally agreeing that compensatory damages may only be recovered upon a showing of intentional discrimination, the appellate courts disagree, however, as to what showing is required in order to establish intentional discrimination under § 202 of the ADA and § 504 of the Rehabilitation Act. In <u>Powers</u>, the Tenth Circuit held that "intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." <u>Powers</u>, 184 F.3d at 1153. Similarly, in <u>Lovell</u>, the Ninth Circuit held that the deliberate indifference standard applies to a determination of intentional discrimination under § 202 of the ADA or § 504 of the Rehabilitation Act. <u>Lovell</u>, 303 F.3d at 1056-57.

By contrast, in Delano-Pyle, the Fifth Circuit held, "There is no 'deliberate indifference standard' applicable to public entities for purposes of the ADA or the RA." Delano-Pyle, 302 F.3d at 575. In Delano-Pyle, the Fifth Circuit concluded that "neither a policymaker, nor an official policy must be identified for claims asserted under the ADA or the RA." Id.

In this case, Defendant urges the Court to apply the standard set forth by the Supreme Court in Davis v. Monroe County Board of Education, 526 U.S. 629, 119 S. Ct. 1661 (1991). In Davis, the Court found the school district could be liable under a deliberate indifference theory like that used to establish municipal liability in § 1983 cases. Davis, 526 U.S. at 643, 119 S. Ct. at 1671. In Davis, the plaintiff was suing the school board for discrimination resulting from student-on-student harassment. The facts of Davis make it distinguishable from this case, however, because in Davis the Court was considering whether the school board could be subject to liability for the actions of a third-party. It is reasonable to conclude that a higher standard should apply where liability is derived from the acts of third parties, rather than from the acts of the school district employees.

Nor is the decision in Gebser v. Lago Vista Independent School District, 524 U.S. 274, 118 S. Ct. 1989 (1998), another case relied on by Defendant, controlling. As in Davis, in Gebser, the Supreme Court considered when a school system could be held liable for sexual harassment of a student by a teacher. The Court held that no damages remedy would lie under Title IX "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of the discrimination in the recipient's programs and fails adequately to respond."

Gebser, 524 U.S. at 290, 118 S. Ct. at 1999.  In Gebser, the Court also imposed a deliberate indifference showing on the plaintiff who seeks to recover, noting:  "The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance.  The premise, in other words, is an official decision by the recipient not to remedy the violation."  Gebser, 524 U.S. at 290, 118 S. Ct. at 1999.  The Court implied that the standard for recovery that it was establishing under the circumstances was high when it added, "Under a lower standard, there would be a risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions."  Id. at 290-91, 118 S. Ct. at 1999.

This Court does not agree with Defendant that Davis and Gebser control in the circumstances of this case.  In Davis, the Court was addressing the liability of the school district for the conduct of a third party; in Gebser, the Court was addressing the liability of the school district for conduct of an employee that was outside the scope of his employment.  Here, however, the conduct at issue was undertaken by School District employees, as part of their regular employment duties.  Thus, the concerns expressed by the Court in Gebser–that a school district not be held liable under a theory of *respondeat superior* for the independent actions of its employees–and in Davis–that a school district not be held liable for the actions of third parties–are not present here.[4]

---

[4] Similarly, the Court finds that Floyd v. Waiters, 133 F.3d 786 (11th Cir. 1998), *vacated* 525 U.S. 802, 119 S. Ct. 33 (1998), *reinstated* 171 F.3d 1264 (11th Cir. 1999), which was, like Gebser, a case in which a student alleged that she was sexually harassed by a school district employee, is not controlling.

While not agreeing that Gebser and Davis control, the Court nevertheless considers that intentional discrimination necessarily demands that the alleged wrongdoer have some notice of the discriminatory conduct and an opportunity to take corrective action. Therefore, the Court finds that in order for Plaintiff to establish intentional discrimination in the manner required by the cases interpreting the relevant statutes, she must show that someone with authority to take corrective action, i.e. a supervisor, had notice of Antione's condition and an opportunity to accommodate his special needs. Further, she must show that the person with authority to take corrective action was high enough on the chain-of-command for his or her acts to constitute an official decision by the school district.[5] Moreover, Plaintiff must show that the person with authority to take corrective action failed to meet Antione's needs and that the failure to do so was intentional. Evidence tending to demonstrate that the person with authority was deliberately indifferent to Antione's special needs may be sufficient, *inter alia*, to show intentional discrimination.

### III. CONCLUSION

In sum, the Court finds that Plaintiff may seek compensatory damages for intentional

---

[5] Relying on Floyd, Defendant suggests that "only the School District's Superintendent or the School District's Board of Education are deemed to be officials who have authority to institute corrective measures on the School District's behalf." (Def.'s Request to Charge No. 7.) As noted previously, the Court finds that the factual circumstances of Floyd make it distinguishable from this case. Moreover, the School District employs professionals whose day-to-day activities include the placement and supervision of children like Antione in facilities like the Butler Center. The Court does not believe that the Eleventh Circuit intended to shield school districts from liability for the discriminatory conduct of these employees, occurring within the scope of their regular activities, by allowing such cases to proceed only where the school superintendent or a school board member is given direct notice by the aggrieved party.

violations of § 202 of the ADA and § 504 of the Rehabilitation Act.

**SO ORDERED**, this the 5th day of May, 2006.

                                           s/ Hugh Lawson
                                           **HUGH LAWSON, Judge**

mls